*FLORIO PERRUCCI STEINHARDT*
*CAPPELLI TIPTON & TAYLOR LLC*
Christian M. Perrucci, Esquire
Attorney ID No. 90408
Robert A. Freedberg, Esquire
Attorney ID No. 7855
60 West Broad Street, Suite 102
Bethlehem, PA  18018
Phone: 610-691-7900
Fax:     610-691-0841
cperrucci@floriolaw.com
rfreedberg@floriolaw.com
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| 4431, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | CASE NO. 5:20-cv-04396-JFL |
| | ) | |
| vs. | ) | |
| | ) | |
| CINCINNATI INSURANCE | ) | |
| COMPANIES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' BRIEF IN RESPONSE AND OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

To:  The Honorable Joseph F. Leeson, Jr., Judge of the United States District Court (E.D. Pa.)

Plaintiffs, by their counsel, Christian M. Perrucci and Robert A. Freedberg, of the law firm of Florio Perrucci Steinhardt Cappelli Tipton & Taylor LLC, respectfully submit this Brief in response to Defendants' Motion to Dismiss.

## A.   COUNTER STATEMENT OF QUESTIONS INVOLVED

1.   WHETHER THE COVID-19 VIRUS AND THE RESULTING ORDERS OF THE GOVERNOR OF PENNSYLVANIA CAUSED DIRECT PHYSICAL LOSS TO PLAINTIFFS' PROPERTIES:

Suggested Answer:  Yes.

2.      WHETHER THE ABSENCE OF STRUCTURAL DAMAGE TO THE PLAINTIFFS' PROPERTIES IS A BASIS FOR DENYING COVERAGE?

Suggested Answer:  No.

3.      WHETHER PLAINTIFFS ARE ENTITLED TO CIVIL AUTHORITY ORDER COVERAGE BECAUSE THERE IS PHYSICAL DAMAGE AND LOSS TO NEIGHBORING PROPERTIES AND LOSS OF ACCESS?

Suggested Answer:  Yes.

**B.**      **LEGAL STANDARD**

When ruling on a Motion to Dismiss a Complaint for failure to state a claim on which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true the allegations of the Complaint and all reasonable inferences therefrom and view them in a light most favorable to the non-moving party.  DiBenedictus v. Merrill Lynch & Co., 492 F. 3rd 209, 215 (3rd Cir. 2007). To withstand the Motion to Dismiss, the factual allegations must be enough to raise a right to relief above the speculative level.  Bell Atlantic Corp. v, Twombley, 550 U.S. 544, 555, 127 S. Ct., 1955 (2007).  More than a formulaic recitation of the elements is required.  Id.

A Court limits its inquiry to the facts alleged in the Complaint, the attachments to the Complaint, matters of public record and indisputably authentic documents if the claims were based on the documents.  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F. 3rd 1250, 1261 (3rd Cir. 1994); Pension Benefit Guarantee Corp. v. White Consolidated Indus. Inc., 998 F. 2d 1192, 1196 (3rd Cir. 1993).

**C.**      **SUMMARY OF ARGUMENT**

Decisions of the Third Circuit Court of Appeals establish that Plaintiffs sustained physical loss to their properties qualifying for coverage for business interruption loss income and Civil Authority Order losses.  Physical loss or damage occurs if there exists an imminent threat of the release of a virus that would cause loss of utility of the insured property.

Plaintiffs lost the use of their properties unlike Plaintiff in the <u>Philadelphia Parking Authority</u> case which experienced only economic loss.

Structural damage to Plaintiffs' property is not required for there to be coverage. Direct physical loss is required. Direct physical loss includes loss of use of the properties for on-site dining restaurants. Loss of the ability to use the property is distinct from the economic loss sustained in <u>Philadelphia Parking Authority v. Federal Ins. Co.</u> There the structures could be used for their intended purpose.

Plaintiffs are entitled to coverage for Civil Authority Orders. There is loss of use to neighboring properties because of probable COVID-19 contamination. The loss of access to Plaintiffs' properties for on-site dining is attributable in part to the possibility of contamination in the neighboring properties.

**D.**     <u>**ARGUMENT**</u>

ISSUE ONE:  PLAINTIFFS ARE ENTITLED TO BUSINESS INTERRUPTION COVERAGE BECAUSE THEY HAVE SUSTAINED PHYSICAL LOSS OF THEIR PROPERTIES.

The insurance policies state:

> We will pay the actual loss of business income . . . you sustain due to the necessary suspension of your operations during the period of restoration. The suspension must be <u>caused by direct loss</u> to property at a premises caused by or resulting from any covered cause of loss. (Underlining added) Building and Personal Property Coverage Form (including Special Causes of Loss), Page 18 of 40. (ECF No. 6, Attachment 1 - Complaint)

> "Loss" means Accidental Physical Loss <u>or</u> Accidental Physical Damage. Id., Page 38 of 40.

At the outset, we note that there is no contention by Defendants that there is a virus exclusion in the policy, so COVID-19 is a covered cause of loss. Further, the business interruption coverage for loss of business income provides coverage for a "direct loss" to the property and

"loss" is <u>either</u> "physical loss" <u>or</u> "physical damage." The terms are in the disjunctive. They are not synonymous.

Panels of the Third Circuit Court of Appeals have explained the meaning of an insurance policy provision requiring "physical loss or damage" to a building for coverage to apply. In <u>Port Authority of New York and New Jersey v. Affiliated FM Ins. Co.</u>, 311 F. 3rd 226 (3rd Cir. 2002), a case wherein plaintiff sought coverage for asbestos remediation, the policy required "physical loss or damage" to the building for coverage to apply. The Court adopted the following test:

> Physical loss or damage occurs only if an actual release of [a contaminant] has resulted in contamination of the property such that its function is nearly eliminated or destroyed or the structure is made useless or uninhabitable <u>or there exists an imminent threat of the release of [a contaminant] that would cause such loss of utility</u>. (Underlining added)

In <u>Motorists Mut. Ins. Co. v. Hardinger</u>, 131 Fed. Appx. 823 (3rd Cir. 2005), the Court reversed a grant of summary judgment. In that case, plaintiffs were refused coverage when they were forced to move out of their residence because of bacterial contamination. The Court held that the test set forth in <u>Port Authority of New York and New Jersey v. Affiliated FM Ins. Co.</u>, supra., applies to cases decided under Pennsylvania law. The Court concluded that summary judgment was wrongly granted because there was direct physical loss "where sources unnoticeable to the naked eye have allegedly reduced use of the property to a substantial degree."

In <u>North State Deli, LLC, et al. v. The Cincinnati Insurance Co., et al.</u>, 20 CVS 02569, General Court of Justice, Superior Court Division (Durham County), State of North Carolina (October 7, 2020), attached hereto as **Exhibit "A,"** the Court had before it precisely the issue now pending before this Honorable Court. Restaurants were forced to close when the State of North Carolina ordered closure of non-essential businesses and stay-at-home and travel restrictions in

March, 2020 in response to COVID-19.  The language of the policies was exactly the same as in the instant matter.

The Court denied Cincinnati's Motion to Dismiss and granted partial summary judgment requiring business interruption coverage for the restaurant owners.  The Court held that there was "direct physical loss" which includes "the inability to utilize or possess something in the real, material, or bodily world, resulting from a given cause without the intervention of other conditions.  The Court stated:

> In the context of the policies 'Direct Physical Loss' describes the scenario where business owners, and their employees, customers, vendors, suppliers and others lose the full range of rights and advantages of using or accessing their business property.  This is precisely the loss caused by the governmental orders.  Plaintiffs were expressly forbidden by governmental decree from accessing ands putting their property to use for income-generating purposes for which the property was insured.  The decrees resulted in the immediate loss of use and access without any intervening conditions.  In ordinary terms, this loss is unambiguously a "direct physical loss," and the polices afford coverage.

See also Studio 417, Inc. v. Cincinnati Ins. Co., 2020 WL 4692385 (W.D. Missouri – August 12, 2020) wherein businesses including restaurants brought an action against Cincinnati Insurance Company under the same provision providing coverage for lost business income as the provision in the instant case and the North Carolina case.  The plaintiffs also sought coverage under the Civil Authority provision of the policy as do the Plaintiffs in the instant case.  In response to COVID-19, governmental authorities issued business closure and stay-at-home orders.  The Court held that plaintiffs adequately alleged "physical loss" under the policies.  The Court expressly relied on Port Authority of New York and New Jersey v. Affiliated FM Ins. Co., supra. adopting the "unusable" test for the finding of "physical loss."  The Court also held that plaintiffs adequately alleged facts entitling them to Civil Authority coverage.

Applying the test for determining whether physical loss or damage had occurred to the averments of the Complaint in the instant matter, there clearly exists an imminent threat of the release of COVID-19 that would cause loss of use of the Plaintiffs' properties.  The threat of contamination by the widespread, easily communicable, deadly virus into the restaurants rendered the structures useless for their primary purpose – on-site dining.

The Supreme Court of Pennsylvania in <u>Friends of Danny Devito v. Wolf</u>, 227 A. 3rd 872 (Pa. Apr. 13, 2020) upheld the closure Order of the Governor of Pennsylvania which expressly mandates closure of in-service dining restaurants.  The Supreme Court cited the global spread of COVID-19, the number of cases and deaths caused by the virus, and the ease with which the virus spreads.  The Court stated:

> The virus spreads primarily through person-to-person contact, has an incubation period of up to fourteen days, one in four carriers of the virus is asymptomatic, and the virus can live on surfaces up to four days.  <u>Devito v. Wolf</u>, At 889-90.

At present, there have been over seven million cases and two hundred thousand deaths caused by COVID-19 in the United States.

Unquestionably, there has existed and continues to exist an imminent threat[1] of contamination of the properties and infection of those who use the properties for on-site dining by COVID-19 that caused and continues to cause <u>loss of the use and utility of Plaintiffs' properties</u> for on-site dining, their primary function.

*   *   *   *   *   *   *

<u>Philadelphia Parking Authority v. Federal Ins. Co.</u>, 385 F. Supp. 2d 280 (S.D.N.Y. 2005), relied on by Defendants, is distinguishable from the instant case.  In that matter, the Parking

---

[1] Defendants concede that they did not deny coverage because the properties have not been contaminated. See Defendants' Brief at Page 21. (ECF No. 5, Attachment 2 - Brief)

Authority which owns and operates parking garages at Philadelphia International Airport made claims on its insurer for business interruption and Civil Authority coverage for lost income which occurred when all traffic was shut down by the Federal Aviation Authority on September 11, 2001 because of the terrorist attacks.  The FAA Orders did not close the Parking Authority's garages.

The Court held that there was no coverage because the insurance policy required that there be "direct physical loss or damage" to the insured's property for coverage to exist.  Clearly, the garages were not structurally impaired, nor were they closed.  The public could still park in the garages.  The fact that few people had reason to go to the airport because planes were not flying was economic loss.  There was neither structural damage to the garages, nor loss of use of the garages, so the Parking Authority could continue to rent parking spaces to those persons, albeit few, who went to the airport.

In the instant matter, pursuant to the test adopted by the Third Circuit in the Port Authority of New York and New Jersey and Hardinger cases, there was physical loss because plaintiffs lost the use of their properties for their primary purpose of in-door dining.  The restaurants were ordered to close.  The parking garages could remain open to rent spaces.

ISSUE TWO:   THE ABSENCE OF STRUCTURAL DAMAGES TO PLAINTIFFS' PROPERTIES IS IRRELEVANT.  THE INABILITY TO USE THE PROPERTY AS RESTAURANTS IS A DIRECT PHYSICAL LOSS QUALIFYING FOR COVERAGE.

For there to be coverage for business interruption lost income there must be direct physical loss to the insured properties.  Direct physical damage is not required.  "Loss" and "damage" have different meanings.  Direct physical "loss" is not synonymous with structural impairment.  See Hardinger, supra. (Summary Judgment was reversed where bacteria caused a house to be unusable even though there was no structural damage to the building).  Direct physical "loss" is loss of use of the property.  As stated in Port Authority of New York and New Jersey v. Affiliated FM Ins.

<u>Co.</u>, 311 F. 3rd 226 (3rd Cir. 2002), physical loss is loss which renders a property useless for its intended purpose.  In the instant case, that is what happened.  The virus prevents <u>use</u> of the property as an on-site dining facility.

The concept of physical loss of the property can be understood by contrasting it with the economic loss suffered by the insured in <u>Philadelphia Parking Authority v. Federal Ins. Co.</u>, 385 F. Supp. 2d 280 (S.D.N.Y. 2005).  The parking garages in that case could still be used.  Thus, there was no direct physical loss to the property.

The inability to <u>use</u> the insured properties because of COVID-19 is direct physical loss to Plaintiffs' properties.

ISSUE THREE:    PLAINTIFFS ARE ENTITLED TO CIVIL AUTHORITY COVERAGE BECAUSE THERE IS PHYSICAL DAMAGE AND LOSS TO OTHER PROPERTIES AND THERE IS LOSS OF ACCESS.

The policy provides Civil Authority coverage pursuant to which Defendants agree to pay for loss of business income and extra expenses caused by action of Civil Authority which prohibits access to the insured properties provided that:

1.    A covered cause of loss causes damage to property other than the covered property;

2.    Access to the area immediately surrounding the damaged property is prohibited by the Civil Authority as a result of the damage; and

3.    The action of the Civil Authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the covered causes of loss that caused the damage.

Building and Personal Property Coverage Form (including Special Causes of Loss), Page 19 of 40.  (ECF No. 6, Attachment 1)

The Governor of Pennsylvania issued Orders closing non-essential businesses including restaurants and requiring all residents to stay at home because of the COVID-19 pandemic.

Complaint Averments 27-30.  Plaintiffs closed their restaurants on March 19, 2020, and they remain closed for on-site service.[2]  Complaint Averments 31-32.

The Governor, in a Proclamation of Disaster of March 6, 2020, found that COVID-19 causes severe symptoms, and loss of life and that it was critical to implement measures to mitigate the spread of the COVID-19 virus.  Complaint Averment 57.  The virus is stable for several hours to days on surfaces such as plastic and stainless steel.  Complaint Averment 58.  The virus spreads through the air from contact with contaminated persons, and from touching contaminated surfaces.  Complaint Averment 58.  There is substantial probability that buildings other than those of Plaintiffs, but proximate thereto, are contaminated with COVID-19 because of the widespread nature of the virus, the ease with which it spreads, and the duration the virus remains on surfaces.  Complaint Averment 59.  The Civil Authority Orders, in part, are a response to the probable contamination of buildings proximate to the premises of the Plaintiffs.  Complaint Averment 60.

In Studio 417, Inc. v. Cincinnati Ins. Co., 2020 WL 4692385 (W.D. Missouri 2020), a COVID-19 coverage case involving the same policy language as the instant case, the Court held that the Civil Authority coverage applied to restaurants forced to halt in-service dining by State issued closure and stay-at-home Orders.

In Studio 417, Inc. v. Cincinnati Ins. Co., the Federal District Judge stated:

> Plaintiffs have adequately alleged that they suffered physical loss, and such loss is applicable to other property.  Plaintiffs allege that Civil Authorities issued closure and stay-at-home Orders . . . , which includes property other than Plaintiffs' premises.

In Footnote 6, the Court noted, "Courts considering non-structural property damage claims have found that buildings rendered uninhabitable by dangerous gases or bacteria suffered direct

---

[2] Recently inside dining on a limited social distancing basis and some outdoor dining is now permitted.

physical loss or damage." See <u>Gregory Packaging, Inc. v. Travelers Property Cas. Co. of America</u>, 2014 WL 6675934 at 6 (D.N.J. 2014).

      As discussed in Issue One, <u>Port Authority of New York and New Jersey v. Affiliated FM Ins. Co.</u>, 311 F. 3rd 226 (3rd Cir. 2002), and <u>Motorists Mutual Ins. Co. v. Hardinger</u>, 131 Fed. Appx. 823 (3rd Cir. 2005) set forth the test for determining whether an insurance policy requirement of physical loss or damage has been met.  If there is "an imminent threat of the release of [a contaminant] that would cause" the function of a property to be "nearly eliminated or destroyed," the requirement is met because COVID-19 is widespread, easily transmitted, lives on a variety of surfaces, and is deadly.  It is probable that structures proximate to Plaintiffs' properties are contaminated.  Denial of access to Plaintiffs' properties is, in part, due to imminent fear of proximate properties being contaminated.  Therefore, the Civil Authority (the Governor) has issued the closure and stay-at-home Orders impacting those properties.  The Court in <u>Studio 417</u>, supra., found that the Civil Authority clauses of the policy were applicable based on the stay-at-home and closure Orders.  The Court accepted plaintiffs' argument that the stay-at-home and closure Orders issued during the pandemic evidence prohibited access as well as loss of use of property since the properties closed by the Orders included businesses throughout the region.

      As a result of the Civil Authority Orders, access to Plaintiffs' properties was strictly prohibited.  The principal use of the properties was for upscale on-site dining.  These were not drive-through pickup fast food places.  Defendants' contention that because Plaintiffs could continue take out and home delivery service, there was no denial of access misses the point that there has been physical loss or damage when the use of the property has been "nearly eliminated." <u>Port Authority of New York and New Jersey v. Affiliated FM Ins. Co.</u>, supra.  Plaintiffs have pleaded the substantial losses of income they have sustained each month.  Complaint Averment

32. <u>Studio 417, Inc. v. Cincinnati Ins. Co.</u>, supra. (The policies require that the Civil Authority Orders prohibit "access," but do not specify "all access" or "any access." The Court held that the prohibition against in-house dining was sufficient denial of access to invoke Civil Authority coverage.)

Restaurants all over the nation are going out of business even though there is curbside pickup available. The limited option of drive through pickup does not constitute access sufficient basis to deny coverage. Plaintiffs are entitled to coverage for the closure and stay-at-home Orders issued by the Governor.

<div style="margin-left:40%">

Respectfully submitted,

**FLORIO PERRUCCI STEINHARDT
CAPPELLI TIPTON & TAYLOR LLC**

 */s/ Christian M. Perrucci*
Christian M. Perrucci, Esquire

 */s/ Robert A. Freedberg*
Robert A. Freedberg
Attorneys for Plaintiffs

</div>

Dated: 10/26/2020